## KAPOLUHI PALAU *v.* HELEMANO LAND COMPANY, LIMITED, AND WILLIAH AHIA, TRUSTEE.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED NOVEMBER 23, 1914.          DECIDED DECEMBER 9, 1914.

ROBERTSON, C.J., WATSON, J., AND CIRCUIT JUDGE ASHFORD, IN PLACE OF QUARLES, J.

EQUITY—*interest of complainant in subject-matter—cancellation.*
In order to maintain a suit in equity the complainant must have an interest in the subject-matter. In a suit to cancel two deeds, alleged to be forgeries, on the ground that they constitute clouds upon complainant's title, where it appeared that the complainant had no title to the land described in the deeds, the bill was properly dismissed.

DEEDS—*forged deed void.*

A forged deed is void and passes no title. The fact of forgery may be shown at law as well as in equity.

### OPINION OF THE COURT BY ROBERTSON, C.J.

(Circuit Judge Ashford dissenting.)

This is an appeal from a decree of a circuit judge dismissing a bill of complaint in a suit in equity in which it was prayed that two certain deeds, namely, a deed dated December 29, 1900, conveying to one William Ahia, trustee, the land described in Grant No. 269, situate at Waialua, Island of Oahu, and purporting to have been executed by the complainant, the other being dated January 9, 1901, conveying the same land to one John Keahipaka, trustee, and purporting to have been executed by the said William Ahia, trustee, be decreed to be fraudulent and void, and that the same be cancelled. There was also a prayer that the defendants be adjudged and decreed to have no interest in said land. The bill averred that the complainant is the owner of the land in question and entitled to the possession of the same; that she inherited the same; that the said deeds are forgeries, the first never having been executed by the complainant, nor the second by the said William Ahia; that said deeds were made, and recorded in the registry of conveyances at Honolulu, by someone unknown to the complainant, for the wrongful and fraudulent purpose of defrauding the complainant of her interest in said land; that the defendant, Helemano Land Company, Limited, claims to be the owner of said land through mesne conveyances from the said John Keahipaka, trustee, and one John Emmeluth; and that the said purported deeds above mentioned constitute clouds upon the complainant's title in and to said land. The defendant, Ahia, in his answer, disclaimed all and any interest in the land in question, and averred that he knew nothing whatever of the execution of either of said deeds; and never paid or received any consideration in connection therewith. The Helemano

Land Company, in its answer, denied the alleged ownership and right to possession of· the complainant; denied the alleged forgeries, and averred ·that the deeds in question ·were executed by the complainant and Ahia, respectively, as they purport to have been executed, and with knowledge of their contents; denied the alleged fraudulent intent; and admitted that it claims to be the owner of any interest which the complainant may have had at any time in said land through the said deeds, but averred that it is advised that ·the true title to· said land is in the Waialua Agricultural Company, Limited.

At· the hearing the testimony was conflicting as to whether the deeds in question had been executed by the complainant and Ahia, respectively. · The circuit judge, over the complainant's objection, admitted in evidence a deed of the land from the original owner, Kainalu, through whom the complainant claims title, undated, but acknowledged on the 24th day of October, 1870, to one Mahuka, and mesne conveyances by which, it was claimed the title passed to the Waialua Agricultural Company. The circuit judge did not pass upon the questions of fact involved in the allegations and denials that the deeds in question are forgeries, but dismissed the bill on the ground that the complainant's ancestor having, in his life time, sold and conveyed the land, the complainant did not inherit title to·it, and, hence, has no interest in the subject-matter of the suit.

Counsel for the complainant contends that. it was error to admit in evidence the deed of Kainalu, the ruling being "based upon the idea that the court had jurisdiction to pass on the legal title" to the land. It would seem, however, from the averment of title in the bill, that counsel for the complainant considered it material to show title, and if the averment was material, it having been denied, it was for the complainant to prove it. At the hearing; testimony, evidently for the purpose of proving title, was introduced tending to show that the complainant was the heir of Kainalu. We think the averment of title was material and that the complainant failed to sustain it.

This involved the legal title only in so far as it went to the interest or lack of interest of the complainant in the subject-matter. On that point the deed of Kainalu was admissible. In order to sustain the averment that the deeds constituted clouds upon the complainant's title, it became necessary for the complainant to show that she had the title.

It is laid down as an elementary proposition that in order to maintain a suit in equity the complainant must have an interest in the subject-matter, and that a bill is demurrable which fails to show such interest. Story, Eq. Pl. (10 ed.) Sec. 508; *Selz* v. *Unna,* 6 Wall. 327, 334; *U. S.* v. *San Jacinto Tin Co.,* 125 U. S. 273, 285. In *Howe* v. *Duppa,* 1 V. & B. 511, 35 Eng. Rep. (Reprint) 199, the plaintiff, as executor of one Duppa, filed a bill for the purpose of having set aside an agreement and conveyances in pursuance thereof made by the decedent to his son, the defendant, on the ground of fraud. There was a plea the substance of which was that the decedent, who had owned a contingent interest in certain property, had parted with such ownership prior to the date of the execution of the conveyances which it was sought to have cancelled. The plea was sustained, the court saying, "the decisive answer to this bill is, that the fact was mistaken; at the date of those deeds he had no interest whatsoever in the property; having eleven years before by the former deed parted with all his interest; a fact which remaining unimpeached destroys the whole foundation of this bill which proceeds upon a supposed interest in him in 1791." In *Barr* v. *Clayton,* 29 W. Va. 256, a suit to set aside a tax deed, it appeared that the ancestor, through whom the plaintiffs claimed title, had, in her life time, sold and conveyed the land to one Taggart. A decree dismissing the bill was affirmed. The court said, "It is equally well settled that the plaintiff cannot maintain his suit unless he both avers and establishes by proof where the averment is denied, that he has an interest in the subject-matter of the suit, or right to the thing demanded, and a proper title to institute the suit. These are

essential to sustain his right to any relief." The subject-matter of a cause "is the right which one party claims as against the other, and demands the judgment of the court upon." *Jacobson* v. *Miller,* 41 Mich. 90, 93; *Reed* v. *Muscatine,* 104 Ia. 183. See also 37 Cyc. 342; *Coleman* v. *Chauncey,* 7 Rob. (N. Y.) 578, 579; *McAndrews* v. *Chicago etc. R. Co.,* 162 Fed. 856, 858; *Jackson* v. *Smith,* 120 Ind. 520, 523. In the case at bar the subject-matter is the title to the land, to remove the alleged clouds from which this bill was filed. The undisputed evidence in the record shows that the complainant has no interest in the title.

The circuit judge did not undertake to pass upon the title to the land further than to determine that the complainant had no interest in the subject-matter. The bill was not dismissed on the ground that the title was in the Waialua Agricultural Company, but because the complainant did not inherit the title from Kainalu as claimed. The admission in evidence of the mesne conveyances to the Waialua Agricultural Company was, therefore, harmless error. Counsel for the complainant correctly contends that the title should be tried at law, but he is mistaken in assuming that the complainant is unable to proceed at law unless the deeds in question be first cancelled. The complainant being out of possession is in position to, at any time, bring an action of ejectment and therein litigate the title to the land, including the question of the alleged forgery. A forged deed is void and passes no title. *Reck* v. *Clapp,* 98 Pa. St. 581, 585; *Sapp* v. *Cline* (Ga.) 62 S. E. 529, 532; *Haight* v. *Vallet,* 89 Cal. 245; *Meley* v. *Collins,* 41 Cal. 663. The fact of forgery may be shown at law, in ejectment, as well as in equity, in a suit for cancellation. *Patton* v. *Fox,* 169 Mo. 97, 105; *Martin* v. *Harvey,* 89 Neb. 173; *Moore* v. *Munn,* 69 Ill. 591, 595. See also *McCandless* v. *Honolulu Plant. Co.,* 19 Haw. 239; *Ah Hoy* v. *Raymond,* 19 Haw. 568, 573. The dictum expressed by Mr. Justice Hartwell in *Manuel* v. *Pelani,* 6 Haw. 97, that at law evidence tending to defeat a sealed instrument

is not admissible, has not been followed. We have been referred to no case, and have found none, where the facts were anything like those in the case at bar where cancellation has been decreed. *Kuamu* v. *Kaeleu*, 4 Haw. 136, and *Bunce* v. *Gallagher*, 4 Fed. Cas. No. 2133, cited by the complainant, are not in point. In each of those cases the complainant owned the title alleged to be clouded by the fraudulent deed. In *Kapiolani* v. *Mahelona*, 9 Haw. 676, the plaintiff was in possession, and her interest in the subject-matter was not disputed.

It has been suggested that as the purported deed of the complainant contains a covenant of warranty she would be entitled, if it be a forged deed, to have it cancelled even though she has no title in the land. But this was not the theory upon which the case was instituted, nor was it so tried in the court below or presented in this court. There are no averments in the bill that any injury is threatened in that regard. It is contended by counsel for the Helemano Land Company that the covenant of warranty was broken as soon as it was made as neither of the parties to the deed was in possession of the land, it being in the adverse possession of a third party; and that the statute of limitations has run against an action for damages for breach of the warranty. We believe we would not be justified, upon the record as it stands, in passing upon this aspect of the case. We are of the opinion, however, that as the question of the alleged forgery of the two deeds mentioned in the bill has not been determined, and as the question just referred to is to remain open, the dismissal of the bill should be without prejudice.

The decree appealed from is reversed and the cause is remanded to the circuit judge with direction to enter a decree dismissing the bill without prejudice.

*Lorrin Andrews* for complainant.

*D. L. Withington* (*Castle & Withington* on the brief) for the Helemano Land Co., Ltd.

Palau v. Helemano Land Co., 22 Haw. 357.

DISSENTING OPINION OF CIRCUIT JUDGE ASHFORD.

I find myself unable to concur in the conclusion reached by the majority of the court herein, or in the reasoning upon which that conclusion rests. In particular, I dissent from the proposition, as expressed in the majority opinion, that "in the case at bar, the subject-matter is the title to the land, to remove the alleged clouds from which this bill was filed."

It appears to me that the subject-matter of the suit consists of the two deeds alleged to have been forged, and that the title to the land is in nowise involved, because a court of equity has no jurisdiction to try legal titles to land. And yet, in spite of this entire lack of jurisdiction for that purpose, the trial of this suit before the circuit judge appears to have proceeded almost entirely upon the theory that he was trying, and was entitled to try, the legal title.

The bill of complaint alleges the forgery of plaintiff's name to a deed to one William Ahia, and the further forgery of said William Ahia's name to a second deed, to one John Keahipaka, and the recordation of said deeds in the territorial registry of deeds, by parties unknown to plaintiff. The deeds themselves were not produced upon the trial, and both the plaintiff and said William Ahia strenuously denied upon oath any knowledge of the execution or of the whereabouts, or of ever having seen either of said deeds.

It is true that the bill of complaint describes said deeds as constituting clouds upon the title to the land which they purport to convey, and of which, as she alleges, she is the owner. But even if we view this suit in the light of a suit to remove a cloud from title, that would not, in my opinion, change the subject-matter of the action by making the title, instead of the forged deeds, and the cancellation thereof, prayed for in the bill, the subject-matter.

It is true that in the opinions written in some of the cases cited in the briefs of counsel, there has been some loose language used which would support the postulate that the title to

the land, instead of the forged deeds, should be considered the subject-matter of the suit. In only two such cases, I believe, are such expressions to be found. The first of these is *Howe* v. *Duppa,* 1 V. & B. 511, 35 Eng. Rep. (Reprint) 199. That case involved a point of chancery practice, as to whether the defendant might introduce a plea alleging that whatever title had been owned by Duppa, had been conveyed by him prior to the execution by him of the deed which his executor sought to have cancelled upon the ground that its execution was brought about by undue influence. The ruling was, that such plea might be filed. But I distinguish that case from the one at bar in this respect;—there, a suit was brought by the executor of Duppa to set aside a deed made by the latter in his lifetime, for the alleged reason that its execution had been fraudulently procured, and the question of warranty of title in nowise entered into that decision; whereas, in the case at bar the plaintiff sets forth that her own name has been forged to a deed which not only purports to convey, but also to warrant the title to the land therein described.

Of much the same character is the case of *Barr* v. *Clayton,* 29 W. Va. 256. In that case the heirs of a deceased person brought suit to cancel certain tax deeds, because of certain alleged irregularities in the proceedings which resulted in the execution of those deeds. The defendants replied that the plaintiffs had no interest in the land affected by the deeds, because the plaintiffs' ancestor had, during his lifetime, conveyed away his title therein. This West Virginia case may be readily distinguished from the case at bar, in that the plaintiffs therein were seeking no relief against the effect of a deed purporting to have been executed by them, or any of them, and especially in that the tax deeds which they sought to have cancelled did not purport to contain any warranty of title by them, or any of them. The plaintiffs in this West Virginia case obviously had no interest whatever in the cancellation of the tax deeds. With respect to those deeds, they stood in the same relation

that any other citizen of the State might have stood, namely, as strangers not only to the title, but to the transaction involved.

The case at bar is peculiar in more than one respect. One of its remarkable features is, that the conveyance upon which the defendants solely rely as the foundation of a title in another than plaintiff, was apparently unknown to the plaintiff or her counsel at the time of commencing this suit, but, after the suit was commenced, it was resurrected from some undisclosed repository, and placed on record, some forty-four years after the date of its acknowledgment. It was a deed from the patentee of the land, one Kainalu, to one Mahuka, and from Mahuka, as attempted to be shown by the evidence, there was an unbroken chain of mesne conveyances to Waialua Agricultural Company, Limited, which corporation, at present claims title. The majority of the objections raised upon the trial by plaintiff's counsel were to the admission in evidence of this original deed from Kainalu, and of the successive deeds in the chain from him to the Waialua Company. These objections were based upon the ground that they were irrelevant, incompetent and immaterial in the trial of this cause, for the reason that the court, sitting in equity, had no jurisdiction to try the legal title to the land described in the deed alleged to have been forged. I feel that those objections were well founded, and should have been sustained, and that the action of the trial judge in admitting them was erroneous. It may here be noted, as another remarkable feature of this case and its trial, that the trial judge did not assume to pass upon the main question submitted to the court, namely, the forgery, or otherwise, of the deeds for whose cancellation the suit was brought. The trial judge appears to have proceeded upon the theory that he was there for the purpose of first trying out the legal title, as a means, apparently, of determining whether or not the plaintiff had any such interest therein as would entitle her to have the alleged forged deeds cancelled, if their forgery had been established. And, while speaking of "elemental propositions," as

the majority of this court, in their opinion, have done, it may not be inappropriate, to here recite another such "elemental proposition," namely, that a court in equity, sitting without a jury, is destitute of authority to try and determine legal titles. And yet that is exactly what the trial judge did in this case, and it was upon that trial, and his conclusions therein, that he based his further conclusion that plaintiff was destitute of such interest in the land described in the deeds alleged to have been forged, as to entitle her to maintain a suit for their cancellation. As we all know, the plaintiff had a right to a jury trial upon the question of whether or not the title of the original patentee, Kainalu, had ever been conveyed by him.

I have been referred to no case, nor have I found any where a plaintiff has been denied the right to have cancelled, a deed to which his name had been forged, and which deed conveyed a covenant of warranty. The fact should not be overlooked that the covenant of warranty in the alleged forged deeds is a most substantial part thereof, and the fact, if it be a fact, that the statute of limitations has now run upon any claim for damages upon that warranty, does not, in my opinion, help the case in the least. Its effect is the same today that it was when the deed containing it was fabricated (if, in fact, it was a spurious deed, as to which fact, by the way, there has been no finding in this case). If this plaintiff should now acquire from Waialua Agricultural Company, Limited, its present holder, the title which, for the purposes of this argument, we may assume to have been conveyed by Kainalu to Mahuka, then, under a familiar principle of law, her title, so acquired, would immediately (by virtue of the warranty mentioned), inure to the benefit of the grantee named in the alleged forged deed, unless the latter shall be adjudged spurious, and cancelled.

To state such a possible condition appears to me to call for a remedy, and that remedy, in my judgment, consists in the right of the plaintiff to have the deed in question adjudged spurious, and have it cancelled, if she shall sustain her allegations

as to its forged and fraudulent character. If it be replied to this, that there are no precedents for such a course, then, I respectfully submit, it is time to make a precedent. It appears to me absurd and preposterous that a forged deed, containing a warranty of title, and falsely purporting to have been executed by this plaintiff, should be permitted to stand untouched, despite her appeal to equity to have its forged and fraudulent character adjudicated, and to have it cancelled. I can see no equitable quality in the suggestion that the plaintiff has no interest in the cancellation of such a deed, unless she shall first prove to a court of equity, a fact into which it has no right to inquire, namely, that she is the owner of the legal title to the land described in the forged deed. But, in my opinion, we are not without respectable precedents for the judgment which I think should be rendered here. A very well considered case, in many respects similar to the one at bar, is *Bunce* v. *Gallagher,* 5 Blatchf. 481, 4 Fed. Cases, No. 2133, at pp. 660, 662.

I have carefully examined all the authorities cited in the majority opinion, and find no adequate support in them for the conclusions reached by the court. Upon the point of the subject-matter of the suit, in particular, I feel that the majority of the court have fallen into error. Some half dozen citations appear in the opinion to support the postulate therein announced that the title to the land described in the alleged forged deeds is the subject-matter of this suit. But, in my judgment, not one of those citations, nor any other case which I have found, supports that proposition. Starting with Judge Cooley's definition of the subject-matter of a suit, as expressed in *Jacobson* v. *Miller,* 41 Mich., 90, 93-94, we find it expressed as follows:

"The subject-matter involved in a litigation is the right which one party claims as against the other, and demands the judgment of the court upon."

Let me ask, what *is* this right, in the case at bar, unless it be the right to have the deeds which are alleged to have been forged, declared spurious, and their cancellation decreed? The

plaintiff does not ask the court to adjudicate her title to the land described in those deeds, and the court, sitting in equity, would have no right to so adjudicate, even if so requested, and if so inclined.

Other citations of the majority opinion require but briefest mention.

*Jackson* v. *Smith,* 120 Ind. 520, 523, does not touch the subject here under discussion. This fact abundantly appears from the opening paragraph of the opinion in that case, which I quote as follows:

"This controversy arises out of the proceedings of the common council of the city of Kokomo ordering that walls be placed along the banks of a watercourse, which flows through the city and is part of its system of drainage, and directing an assessment upon private property to pay the expense of making the improvement. The appellant seeks to quiet her title and asserts that the proceedings were absolutely void."

*Reed* v. *City of Muscatine,* 104 Iowa 183, was an action at law for personal injuries sustained by plaintiff upon the city street, due, as alleged, to a defect therein for which defendant was responsible.

*McAndrews* v. *Chicago L. S. & E. Ry. Co.,* 89 C. C. A. 586 (162 Fed. 856), was also a personal injury case, wherein the court defined the phrase "subject-matter of the action" in a personal injury suit, to be "the circumstances and facts out of which the action arises." Applied to the case at bar, this last-cited case is, in my judgment, a distinct authority for the plaintiff.

*Coleman* v. *Chauncey,* 7 Rob. (N. Y.) 578-9, was a claim for a percentage, (by way of costs,) upon the amount of money involved in a certain suit; but the court took occasion to define the phrase now under consideration, and did so as follows:

"The subject-matter involved is that which is to be directly affected by the action."

Again, regarding this case as an authority for the plaintiff, I would suggest that "that which is to be directly affected by

the action" in the case at bar, consists of the alleged forged deeds, sought to be cancelled.

Two other cases remain to be noticed, which are cited to the point that a person having no interest in the subject-matter of the action will not be heard in equity. The first of these is *Selz* v. *Unna,* 6 Wall. 327, 18 Law Ed. 799. The point upon which the plaintiffs were there dismissed from court was that they were seeking to enforce against the defendant, an inequitable and dishonest agreement into which they had entered with him, in another suit, wherein the defendant had been plaintiff, and the plaintiffs, with another, had been defendants. The substance of the agreement was, that the plaintiffs in the latter suit, (defendants in the former,) should "lie down," and allow judgment to be taken against them and their co-defendant, and that the plaintiff in the former suit should then look only to the co-defendant referred to, (the proposed victim of the conspiracy,) for the recovery sought. I can find in the case last cited nothing whatever to support the conclusions of the majority of the court in the case at bar.

*U. S.* v. *San Jacinto Tin Co.,* 125 U. S. 273, 31 Law Ed. 747, was a case where the defendants claimed that the United States had lent its name to the prosecution of a suit to revoke a land patent, not for its own benefit, but for the benefit of a third party, who alone, would profit thereby. The court held that such a suit could not be maintained in equity, but it also held that the United States had a real interest in the maintenance of the suit, although the defendants won upon the merits.

It has been with extreme reluctance that I have felt compelled to thus dissent from the views of the majority of the court, but, as I view the merits of this case, and the authorities to which we have been referred, as well as others which I have consulted, there is no other course open to me.

In my judgment the decree should be reversed, and the cause remanded for a finding upon the facts as to whether the deeds complained of were forged and spurious.